UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KATIE S. DAVIS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:09-CV-1070-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Katie Davis, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Ms. Davis timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Davis was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a "limited ninth grade

education." (Doc. 8 at 4, Tr. at 44, 142.) Her past work experience includes employment as a cashier, unskilled; marina sales/supervisor, skilled; and cook and screen printer, semiskilled. (Doc. 8 at 4, Tr. at 44.) Ms. Davis claims that she became disabled on June 6, 2003, due to migraines[1], panic attacks, deteriorating disc disease, neck pain, back pain, and depression. *Id*. at 72, 137.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These

---

[1]Plaintiff testified at the hearing before the ALJ that "migraines did not keep her from working other than the actual time when she was having a headache. . . . she could not work because of neck problems and depression and not due to migraines." (Tr. at 42.)

impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id*.) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis

proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Davis "met the insured status requirements of the Social Security Act through December 31, 2008." (Tr. at 36.)  He further determined that Ms. Davis has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.*  According to the ALJ, Plaintiff's "history of migraines, degenerative disc disease in the cervical spine, probable herniated nucleus pulpous at C6/C7 with mild stenosis and narrowing at C5/C6, depression by history, borderline intellectual functioning and history of alcohol abuse" are considered "severe" based on the requirements set forth in the regulations. *Id.*  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.* at 40.  The ALJ determined that Ms. Davis has the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b) and

416.967(b) except restricted to no climbing ropes/ladders/scaffolding, avoid concentrated exposure to cold/heat, no work at unprotected heights/unguarded machinery, limited to unskilled work, occasional contact with supervisors/coworkers/general public and no overhead lifting." *Id.* at 41.

The ALJ then determined that, "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 44.) Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from June 6, 2003 through the date of this decision." *Id.* at 45.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court

approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Davis alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for two reasons.  (Doc. 8 at 6-12.)  First, Plaintiff claims the "ALJ's physical RFC findings are not based on substantial evidence."  *Id*. at 6.  Second, Plaintiff contends "the ALJ's mental RFC findings are not based on substantial evidence."  *Id*. at 9.

A.    Physical RFC Findings.

Plaintiff claims the ALJ improperly rejected the opinion of Dr. David L. Gordon, one of Plaintiff's treating physicians.  (Doc. 8 at 7.)  The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon: the examining and treating relationship the medical source had with the claimant, the

evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the

legal consequences of his condition." *Lewis*, 125 F.3d at 1440.   Such

physician's opinions are relevant to the ALJ's findings, but they are not

determinative, since the ALJ bears the responsibility for assessing a

claimant's RFC.   *See e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ noted the physical capacity evaluation and clinical assessment

of pain completed by Dr. Gordon on December 8, 2008.   (Tr. at 39.)   As

discussed by the ALJ, Dr. Gordon concluded Claimant

> could lift/carry 10 pounds or less frequently.  In an
> eight hour day she could sit for a total of four hours
> and stand for a total of one hour.   She had
> restrictions in pushing and pulling movements (arm
> controls and/or leg controls), climbing (stairs and
> ladders) and balancing, reaching (including reaching
> overhead) and working with or around hazardous
> machinery.  This level of severity had existed since
> January 2005.  Pain was present to such an extent as
> to be distracting to the performance of daily activity
> or work.  Physical activity greatly increased pain to
> such a degree as to cause distraction from or total
> abandonment of task.  Prescribed medication might
> cause some limitations to be present but not to the
> degree as to create serious problems in most
> instances.

*Id*. at 39, 329-31.   However, the ALJ concluded that Dr. Gordon's

assessments were entitled to little weight because his opinion "can not be

supported in his records." *Id.* at 43.

In reviewing Dr. Gordon's records, it is apparent the ALJ was correct. Plaintiff saw Dr. Gordon on June 30, 2008, August 12, 2008, September 8, 2008, September 29, 2008, October 29, 2008, November 18, 2008, and December 8, 2008.   On each occasion Dr. Gordon reported that, while Plaintiff's range of motion was decreased and he continued Plaintiff on medication, her sensation and motor strength was intact.  (Tr. at 302, 307, 324-25, 327.)  Additionally, Dr. Gordon examined Plaintiff due to complaints of migraines on December 30, 2005, January 29, 2006, and March 24, 2006. While Dr. Gordon did not note any findings with regard to Plaintiff's range of motion or motor strength, he noted after each visit that Plaintiff's eyes, ears, nose and throat were all normal.  *Id.* at 303.

Even if Dr. Gordon's records were not inconsistent, the ALJ's conclusion as to Plaintiff's physical RFC is further supported by the entirety of the medical evidence of record.  The ALJ noted Plaintiff's claim of neck pain for years in July 2003, however there was no neck injury.  (Tr. at 42.) Plaintiff reported in October 2004 that her bouts of neck pain were resolved. On July 28, 2008, Plaintiff had a CT scan of the neck, which showed only a

possible small disc herniation at C6-7 and mild spinal stenosis with foraminal

narrowing at C5-6 secondary to broad based disc osteophyte complex.

Further, on October 8, 2008, an x-ray of the cervical spine showed

degenerative changes to the lower cervical spine, but no acute bony injury.

*Id*. at 39, 42.  The ALJ also noted that, while Plaintiff testified that she had

back problems, a physical examination in March 2007 showed she walked

with a normal gait and used no assistive devices.  *Id*. at 38-39, 42.

Thus, the ALJ properly evaluated Plaintiff's physical RFC and was

correct in giving little weight to Dr. Gordon's opinion.

B.    Mental RFC Findings.

Plaintiff next alleges that the ALJ erred in "failing to report the

diagnosis and conclusion of a consultative psychologist [Dr. John R. Haney]

in March 2007 which would have been dispositive on the issue of mental

functioning."[2]  (Doc. 8 at 11.)  An individual's RFC is an example of an issue

---

[2]Plaintiff also claims the ALJ "improperly reviewed and relied on evidence
that, absent reopening of a prior application, was prior to a mandatory onset of May
4, 2005." (Doc. 8 at 11.)  It is true that Plaintiff previously filed for social security
benefits on January 9, 2007, alleging disability beginning June 6, 2003 (the same
onset date as in the present application at issue), and the claims were denied on
March 28, 2007.  (Tr. at 34.)  However, the ALJ's conclusion in the present case is the
same conclusion as that of the first ALJ.  Additionally, the evidence to which Plaintiff
is referring consists primarily of a consultative psychological examination performed

that is administrative in nature, not a medical issue.  Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.).   The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ.   *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5.  According to Soc. Sec. Rul. 96-8p, "[t]he RFC assessment must always consider and address medical source opinions.  If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 (S.S.A.).  His decision must be based not only upon the medical evidence, but upon all evidence in the record.  *Id*.  Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

---

by Dr. John Haney on March 28, 2005.  (Doc. 8 at 5-11.)  The ALJ gives some weight to this opinion because Dr. Haney stated, "[w]ith treatment, the patient's condition might gradually improve in the next six to twelve months.  With improvement, this patient might be referred to vocational rehabilitation for training for employment that took into consideration physical and emotional limitations."  (Tr. at 38, 43, 110-11.)  The ALJ gave only some weight to this opinion in that it does not appear Plaintiff ever sought the recommended treatment.  *Id*. at 43.

Dr. Haney first examined Plaintiff on March 28, 2005.  (Tr. at 37.)

During that examination, as noted by the ALJ, Plaintiff admitted several

arrests, denied alcohol or other drug use, admitted one psychiatric

hospitalization for drinking and having a "nervous breakdown", taking Xanax

and Lortab each twice daily, admitted feeling depressed most of her life,

complained of poor sleep and low energy/appetite, but denied suicidal

thoughts.  *Id*. at 37, 210-11.  He did not note any psychotic symptoms, and

while conversation appeared logical and goal directed, her mood appeared

depressed.  With the exception of depression and migraine headaches, she

denied other physical or emotional problems.  Dr. Haney concluded that

Plaintiff

> appeared depressed and might need further
> assessment of these symptoms.  Her ability to
> function in most jobs appeared moderately impaired
> by the claimant's physical and emotional limitations.
> *With treatment, the patient's condition might*
> *gradually improve in the next six to twelve months*.
> With improvement, this patient might be referred to
> vocational rehabilitation for training for employment
> that took into consideration physical and emotional
> limitations.

*Id*. at 37-38, 110-11 (emphasis added).  While Plaintiff correctly points out

that her condition did not improve within six to twelve months (Doc. 8 at

10), she neglects to mention that there is nothing in the record to indicate

that she actually got treatment for her mental health problems as

recommended by Dr. Haney, other than getting medication for panic attacks

and anxiety.  *Id*. at 141-42, 167-68, 174.

Dr. Haney examined Plaintiff a second time on March 22, 2007.  (Tr. at

38.)  Although the ALJ does not give weight to this opinion and does not note

Dr. Haney's conclusion that Plaintiff had "major depression, recurrent,

moderate to severe, with suicidal ideation", and her "ability to function in

most jobs appeared moderately to severely impaired by the patient's

physical and emotional limitations", the ALJ did consider Dr. Haney's

findings.  As the ALJ noted, Dr. Haney reported Plaintiff appeared sad,

anxious, and tearful, was a poor historian, rather vague, had not drank in a

year, denied other substance abuse, took Xanax and Lortab daily, was unable

to subtract serial sevens, had difficulty with other simple problems in change

making and arithmetic, and had intelligence in the borderline range.  *Id*. at

38, 253-54.  He did not note any psychotic symptoms, but did note her mood

appeared depressed, her insight appeared poor, she admitted to always

feeling depressed, complained of poor sleep, low energy and suicide thoughts, cried all the time, and complained of neck pain, back pain, migraines, nervous breakdowns, and that she was so depressed at times she could not get out of bed. *Id*. According to Dr. Haney's notes, Plaintiff was not under a physician's care for any of the above problems. *Id*. at 254. Again, Dr. Haney concluded she "would probably require further medical assessment and treatment of her multiple physical problems. She also appeared quite depressed and might need further assessment of these symptoms." *Id*. at 38, 253-54.

While the ALJ does not mention Dr. Haney's March 2007 opinion in his final conclusion that Plaintiff is not disabled, the ALJ gave "some weight" to Dr. Haney's March 2005 opinion because the portion of that opinion concerning Plaintiff's ability to function, the possibility that treatment might gradually improve Plaintiff's condition, and the possibility that she may be referred to vocational rehabilitation is "not inconsistent [with] the medical evidence of record". (Tr. at 43.) The ALJ further gave "great weight" to the opinion of Dr. Frank Nuckols, the state agency medical consultant who examined Plaintiff on March 28, 2007. *Id*. at 43. Dr. Nuckols noted the

March 22, 2007 conclusion of Dr. Haney that Plaintff had "major depression, recurrent, moderate to severe, with suicide ideation, anxiety disorder, and borderline intellectual functioning". *Id*. at 269.  However, while Dr. Haney regarded Plaintiff's statements as truthful, Dr. Nuckols considered her allegations of depression as "partially credible".  *Id*. at 254, 269.  Further, Dr. Nuckols found that Plaintiff would have moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instruction, maintain attention and concentration for extended periods, and interact appropriately with the public; Plaintiff was not significantly limited on the other areas assessed; Plaintiff could understand, remember, and complete short, simple 1 to 2 step tasks; Plaintiff would be able to maintain attention sufficiently to complete simple 1 to 2 step tasks for a period of at least 2 hours without the need for supervision or extra rest periods.  He further found that while changes in Plaintiff's work environment or expectations should be infrequent and introduced gradually, she could tolerate non-intense interactions with the general public. *Id*.  at 279-81.

Finally, as the ALJ states, "[t]he only notations in the file for psychological problems are in Dr. Haney's consultative examinations.  No one

else seems to report anything not even Dr. Gordon in exhibit 23F." (Tr. at 43.)  Further, as noted by the ALJ, although Claimant "was diagnosed with borderline intellectual functioning and she exhibited some intellectual limitations, these limitations had not prevented the claimant from working in the past.  There is no evidence that she had any increased limitations since she last worked."  *Id*.

Thus, the ALJ did not err in determining Plaintiff's mental RFC.

IV.   Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this <u>28th</u> day of <u>June 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671